UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| KATHRYN MCVICKER<br>      Plaintiff, | )<br>)<br>) | |
| v. | ) | Civil Action No.: 3:21-cv-385 |
| GARNETT REFRIGERATION,<br>INC.,<br>      Defendants | )<br>)<br>)<br>)<br>) | |

## COMPLAINT

Plaintiff Kathryn McVicker ("Plaintiff" or "McVicker"), for her Complaint against Garnett Refrigeration, Inc. ("Defendant" or "Garnett"), states as follows:

### NATURE OF ACTION

1. McVicker brings this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*. ("Title VII"), and/or the Pregnancy Discrimination Act amendments to Title VII, 42 U.S.C. §2000e(k) ("PDA"), in that Defendant terminated the McVicker's employment in violation of the Title VII and the FMLA.

2. McVicker seeks declaratory judgment, injunctive relief, back pay, benefits, compensatory and punitive damages, reasonable attorney's fees and costs for Title VII violations.

### JURISDICTION AND VENUE

3. This Court has original jurisdiction to hear this Complaint and to adjudicate the claims stated herein under 28 U.S.C. §§ 1331, 1343 and 42

1

U.S.C. § 2000e-5 because McVicker brings claims under Title VII. The demand for declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

4. Venue is proper in the Eastern District of Virginia and in the Richmond Division under 42 U.S.C. § 2000e-5(f) which provides that venue is proper in any district court in the state; see also *General Electric Co. v. Merhige*, 1972 U.S. App. LEXIS 6632, No. 72-3327, 1972 WL 2610 (4th Cir. Nov. 20, 1972) (unpublished) (applying provision).

5. McVicker has exhausted all necessary procedural prerequisites and has filed her Title VII claims within ninety (90) days of her receipt of a "Right to Sue" letter from the Equal Employment Opportunity Commission.

## PARTIES

6. McVicker is a female resident of Fredericksburg, Virginia. At all times relevant to the matters alleged herein, McVicker was an employee within the meaning of Title VII pursuant to 42 U.S.C. § 2000e(f). At all times pertinent hereto, Garnett employed more than 15 employees.

7. Garnett is a Virginia Corporation doing business in Spotsylvania, Virginia. At all times pertinent hereto, Garnett has been an "employer" within the meaning of 42 U.S.C. § 2000(b) and has been subject to the provisions of Title VII.

## FACTS

8. McVicker began her employment with Garnett on August 6, 2018, as a Dispatcher.

9. Her job duties included scheduling and training new hires on the dispatching systems, overseeing time and attendance of employees, billing, opening and closing work orders on Defendant's software.

10. McVicker also coordinated schedules for coverage and days off for technicians. She usually opened and/or closed the building and conducted morning briefings to review the technicians' daily workload.

11. McVicker also handled inter-office conflicts.

12. Plaintiff further bid and/or negotiated contracts for service agreements, submitted proposals to customers, and maintained all necessary documentation. Plaintiff was responsible for managing product inventory.

13. McVicker was employed in that position until March 16, 2020.

14. On March 16, 2020, Garnett unlawfully terminated Plaintiff.

15. McVicker enjoyed her job and the people she worked with.

16. McVicker consistently received praise from Defendant's customers.

17. McVicker worked full-time and occasionally worked overtime when asked.

18. In August of 2019, McVicker discovered that she was pregnant. She was excited about having another baby and told Defendant's General Manager, Ricky Pack, about it later that month.

19. Up until telling Garnett about her pregnancy, McVicker had received regular pay increases, free lunches, gift cards, and other small gifts.

20. After Plaintiff revealed her pregnancy, Defendant stopped giving her any tokens of its appreciation.

21. Plaintiff's baby was due at the end of March 2020, and McVicker told Garnett that she planned to work until the baby's birth, after which she intended to take six to eight weeks of maternity leave.

22. On Monday morning, March 16, 2020, management had a meeting to discuss the Coronavirus and its impact on the company.

23. Plaintiff spoke with Stacy Pettit, expressing her concern about one particular employee, Erik Pruett, who had vacationed on a cruise ship.

24. In March of 2020, the Centers for Disease Control and Prevention recommended that all people avoid travel on cruise ships worldwide because the chance of getting COVID-19 on cruise ships was high.

25. McVicker posed the question what management intended to do to minimize the risk of infection, since Pruett was expected to return to work on that day, March 16, 2020.

26. During this meeting Defendant distributed a letter advising employees that if they did not feel comfortable at work, they could use a vacation day and stay home.

27. General Manager Pack ("Pack") and other employees made light of the virus and expressed their view that the pandemic was not as serious as reported in the news.

28. Pack then spoke directly to McVicker, stating, "I hear you have a problem with Eric?"

29. McVicker responded, "I am pregnant, and I am high-risk, and, yes, I have concerns." McVicker also relayed to Pack at that time that other employees had addressed concerns as well.

30. Pack responded that if she did not feel comfortable, Plaintiff did not have to come to work.

31. Pack also asked McVicker when she was planning to take maternity leave, and she repeated that she was planning to work as close to the birth as possible.

32. Pack then told her that Garnett intended to hire a replacement for McVicker for the summer.

33. Plaintiff replied that this was unnecessary as she was only going to be out for six to eight weeks.

34. In the evening of March 16, 2020, McVicker received a call from Alexis Bates, Office Manager, telling her that Defendant's owner, John Garnett and Pack had decided to terminate McVicker because "it was just not working out."

35. A few days later, Defendant changed its explanation for Plaintiff's termination, claiming that McVicker had been terminated for using inappropriate language at work, including the "f-word." Most of the men

working for Garnett had used that word and other cuss words at work many times before, but nobody had ever been terminated for using bad language.

36. Defendant's statements were pretext designed to hide the true reason, pregnancy discrimination, for McVicker's termination.

37. Defendant terminated McVicker on March 16, 2020, because of her pregnancy, in violation of Title VII.

38. As a result of Defendant's unlawful action, McVicker lost her job and income.

39. Defendant's decision to terminate McVicker was made in willful, blatant and intentional disregard of and in violation of Plaintiff's rights under Title VII.

## COUNT I
## TITLE VII – GENDER/PREGNANCY DISCRIMINATION

40. Each of the preceding paragraphs is incorporated herein by reference.

41. McVicker, because of her gender and pregnancy, was denied terms and conditions of employment in violation of Title VII of the Civil Rights Act of 1964, as amended.

42. Prior to taking discriminatory employment action against McVicker, Defendant became aware of her pregnancy.

43. Defendant's discrimination against McVicker was an intentional or reckless disregard of her rights under Title VII of the Civil Rights Act of 1964, as amended.

44.  Defendant engaged in discriminatory actions described above with malice, or with a reckless indifference to Plaintiff's legal rights. Plaintiff is therefore entitled to punitive damages for Defendant's actions alleged herein.

45.  McVicker has been damaged as a result of Defendant's unlawful conduct. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered great humiliation, distress, embarrassment, inconvenience, mental anguish, pain, suffering, injury and damages, including damage to her reputation and good will, loss of income, loss of employment, loss of employee benefits, litigation expense including attorney's fees, and consequential damages including the loss of employment opportunities, business and development opportunities, and other injury.

46.  Due to the severity of the conduct by Defendant, McVicker is entitled to punitive damages.

47.  Plaintiff has been damaged by Defendants' actions, including, but not limited to loss of employment, loss of compensation and employment related benefits, loss of health insurance for Plaintiff and her baby, and litigation expense including attorney's fees.

## PRAYER FOR RELIEF

Wherefore, Plaintiff Kathryn McVicker, requests judgment against Defendants as follows:

A. For appropriate declaratory relief regarding the unlawful acts and practices of Defendant, pursuant to Title VII of the Civil Rights Act of 1964;

B. For an award of compensatory damages against Defendant Garnett Refrigeration, Inc.;

C. For an award of punitive damages against Defendant Garnett Refrigeration, Inc.;

D. For pre-judgment and post judgment interest;

E. For an aware of an amount sufficient to offset any adverse tax consequences resulting from a lump sum aware or an aware of other relief in this action because she was required to file suit to enforce her federally protected rights;

F. For an award of incidental and consequential damages, actual attorney's fees and costs of this action, including expert witness fees; and

G. For such other and further relief to which Plaintiff may show herself justly entitled.

**TRIAL BY JURY IS REQUESTED**

           KATHRYN MCVICKER


           _____/s/ Tim Schulte_____
           Tim Schulte (VSB # 41881)
           Blackwell N. Shelley, Jr. (VSB #28142)
           Shelley Cupp Schulte, P.C.
           3 West Cary Street
           Richmond, Virginia 23220

(804) 644-9700
(804) 278-9634 [fax]
schulte@scs-work.com
shelley@scs-work.com

*Counsel for Plaintiff*

/